**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | |
| MICHAEL VAN BIBLE, | CASE NO. 09-06721 EAG |
| DEBTOR. | CHAPTER 7 |
| | |
| TENNIER INDUSTRIES, INC., | |
| PLAINTIFF, | ADV. PROCEEDING NO. 10-00018 |
| v. | |
| MICHAEL VAN BIBLE, | |
| DEFENDANT. | FILED & ENTERED ON 08/03/2012 |

**OPINION AND ORDER**

This proceeding is before the court on a previous order directing the parties to brief the issue as to why this adversary proceeding should not be held in abeyance pending the final adjudication by a Tennessee court of a complaint filed by Tennier Industries, Inc. against Michael Van Bible and others; Tennier's motion in compliance with that order; and the reply to Tennier's motion filed by Michael Van Bible. (Adv. Dkt. Nos. 43, 48 & 53, respectively.)  For the reasons set forth below, the adversary proceeding of caption is held in abeyance pending the final adjudication of Tennier's claims against Van Bible in the Tennessee court.

**I.     PROCEDURAL BACKGROUND**

Van Bible filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on August 17, 2009, which was docketed as case number 09-06721. (Bankr. Dkt. No. 1.)   In

schedule F, Van Bible listed Tennier's claim, in the amount of $2.5 million, as disputed and based on a lawsuit filed against him by Tennier in Tennessee. (Bankr. Dkt. No. 1.) The deadline for a non-governmental entity to file a proof of claim in the bankruptcy case expired on December 15, 2009. (Bankr. Dkt. No. 6.)

On April 28, 2010–134 days after the expiration of the claims deadline–Tennier filed its proof of claim against Van Bible. (Claims Register No. 7-1.) Van Bible objected to the late claim. (Bankr. Dkt. No. 113.) Tennier replied. (Bankr. Dkt. No. 119.) On June 5, 2012, the court denied the objection and allowed the claim, but subject to Tennier prevailing in the Tennessee litigation and, in that event, subordinated to timely-filed claims of the same priority. (Bankr. Dkt. No. 130.) Because distribution in this case is unlikely to reach a subordinated claim, the court found it unnecessary to estimate Tennier's claim. (Bankr. Dkt. No. 130.)

On March 12, 2010, Tennier filed a motion to modify the automatic stay to continue its litigation in Tennessee against Van Bible. (Bankr. Dkt. No. 29.) Tennier filed a legal memorandum in support of the motion to lift stay on September 23, 2010. (Bankr. Dkt. No. 60.) And, on November 17, 2012, Tennier moved the court to modify the stay so as to allow it to continue the Tennessee litigation against non-debtor, third parties. (Bankr. Dkt. No. 66.) The court, on December 14, 2010, modified the stay to allow Tennier to continue with the Tennessee litigation until judgment against Van Bible. (Bankr. Dkt. No. 77.) The court also ruled that the automatic stay did not apply to non-debtor, third parties and that Tennier could, thus, continue its Tennessee litigation against them. (Bankr. Dkt. No. 78.)

Tennier filed, on February 12, 2010, the instant adversary complaint to except its claim from discharge under sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code. (Bankr.

Dkt. No. 28; Adv. Dkt. No. 1.)  The complaint alleges that Van Bible committed fraud against Tennier and that he violated his fiduciary obligations to the company.  (Adv. Dkt. No. 1.)

This adversary proceeding was reassigned to the undersigned judge in September 2011.  After reviewing the pleadings in the Tennessee lawsuit and the instant adversary proceeding, the court, at the pretrial conference held on December 6, 2011, *sua sponte* raised the question as to why it should not hold in abeyance this adversary proceeding pending the final resolution of the Tennessee litigation and ordered the parties to brief this issue. (Adv. Dkt. No. 43.)  Tennier answered the order on January 19, 2012.  (Adv. Dkt. No. 48).  It argued that the issue of nondischargeability under section 523 and the elements of the alleged violation are matters of federal bankruptcy law.  (Adv. Dkt. No. 48.)  Tennier further argued that holding this proceeding in abeyance pending resolution of the Tennessee litigation would delay the determination of the dischargeability of its claim.  (Adv. Dkt. No. 48.)  Van Bible answered the order and responded to Tennier on May 14, 2012.  (Adv. Dkt. No. 53).  He argued that Tennier's underlying claim should first be finalized in the Tennessee court before the issue of dischargeability can be addressed by the bankruptcy court.  (Adv. Dkt. No. 53.)

## II.    COMPARISON OF ADVERSARY AND TENNESSEE COMPLAINTS

The complaint in this adversary proceeding contains identical or substantially identical factual allegations to those of the complaint and amended complaint filed by Tennier against Van Bible and others in the Circuit Court for Scott County, Tennessee.  (Adv. Dkt. No. 1; Bankr. Dkt. No. 60, Exs. 2 & 6, respectively.)  Below is a list of underlying factual allegations of the adversary

complaint and the paragraph references to where the identical or substantially identical allegations of the Tennessee complaints can be found:

¶ 1:    "Tennier conducts business in the State of Tennessee, and it operates manufacturing facilities in Morgan and Scott Counties, Tennessee."

Identical to the second sentence of paragraph 1 of the Tennessee complaint.

¶ 3:    "Defendant resided at 1225 Eagle Bend Road, Clinton, Tennessee, 37716."

Found in paragraph 2 of the Tennessee complaint.

¶ 11:    "In January of 1986, Defendant left Tennier for a short period of time and returned to Tennier in September of 1986, as the Plant Manager."

Identical to the second sentence of paragraph 7 of the Tennessee complaint.

¶ 12:    "Upon Defendant's return to Tennier, Defendant served as the Plant Manager and Director of manufacturing until his termination."

Substantially identical to the third sentence of paragraph 7 of the Tennessee complaint.

¶ 14:    "Defendant's sole responsibility as the Director of Manufacturing was to oversee the manufacturing and design of Tennier products to ensure that each product met all required specifications of the United States Government and its agencies."

Substantially identical to the first half of paragraph 8 of the Tennessee complaint.

¶ 14, n.1:    "Defendant did not have direct responsibility for the administrative side of the manufacturing process, which was the responsibility of Lane Duncan, the Director of Plant Administration."

Substantially identical to the second half of paragraph 8 of the Tennessee complaint.

¶ 15:    "During Defendant's employment with Tennier, Defendant gained access to Tennier's trade secrets, confidential and proprietary information, including, but not limited to: (i) comprehensive customer lists, including the names, phone numbers and other important information about each of Tennier's customers and prospective customers; (ii) confidential pricing formulas; (iii) business plans, sales projections and financial forecasts; (iv) marketing strategies; (v) specific product features, product limitations, planned product enhancements and new product ideas; (vi)

4

contract proposals; (vii) status of negotiations, in terms of contracts with potential and existing customers; (viii) customer purchase histories and preferences; (ix) production of proprietary processes and manufacturing of machinery and equipment; and (x) employee compensation."

Identical to paragraph 9 of the Tennessee complaint.

¶ 16:  "Throughout Defendant's employment with Tennier, Tennier undertook measures to protect its confidential and proprietary information by limiting access to its confidential and proprietary information to senior management acting in a fiduciary capacity and other key employees who needed such information to conduct business on behalf of Tennier."

Substantially identical to paragraph 10 of the Tennessee complaint.

¶ 18, n.3:  "Wooly Lamb's principal place of business is 5410 Homberg Drive, Suite 26, Knoxville, Tennessee. Wolly Lamb operated manufacturing facilities in Scott County, Tennessee."

Identical to the address in paragraph 3 of the Tennessee complaint.

¶¶ 19 & 20:  "While employed by Tennier, a former employee approached Lane Duncan, the Director of Plant Administration, with an idea for an organic reusable diaper.  Ms. Duncan sent the former employee to Defendant to evaluate the product to determine if Tennier was interested in manufacturing or developing it."

Substantially identical to the first and second sentences of paragraph 38 of the Tennessee complaint.

¶ 21:  "Defendant evaluated the product and determined that it was not a viable product for Tennier.  However, in breach of his obligations and fiduciary duties as the Director of Manufacturing, Defendant chose to develop and produce the product for his own company, Wooly Lamb."

Substantially identical to paragraph 39 of the Tennessee complaint.

¶ 22:  "On November 12, 2005, Defendant began directing Tennier employees to manufacture products for Wooly Lamb."

Substantially identical to paragraph 12 of the Tennessee complaint.

¶ 23: "Further, upon information and belief, Wooly Lamb was also manufacturing organic clothing, which was originally manufactured and developed at Tennier."

Substantially identical to paragraph 40 of the Tennessee complaint.

¶ 24: "In November 2005, Defendant falsely represented to Lane Duncan, the Director of Plant Administration, that Mr. Howard Thier, the CEO of Tennier, and Mr. Steve Elsen, the CFO, were aware and approved of Defendant's use of Tennier's machinery, equipment, employees and resources to manufacture Wooly Lamb products at Tennier."

Identical to paragraph 14 of the Tennessee complaint.

¶ 25: Based on Defendant's representations, Ms. Duncan did not report Defendant's activities to Mr. Thier or Mr. Elsen at the time."

Identical to paragraph 14 of the Tennessee complaint.

¶¶ 26 & 27: "For Tennier to meet the United States Government's standards, Tennier's accounting system is designed to capture and account for direct labor by contract. If direct labor is not attributable to a specific contract or a specific job, that labor is then classified as commercial labor and is reflected as such in Tennier's General Ledger."

Substantially identical to paragraph 13 of the Tennessee complaint.

¶ 28: "In connection with Tennier's year-end audit as of and for the year ended February 28, 2006, Mr. Eisen learned that a significant amount of direct labor was charged as commercial labor."

Substantially identical to paragraph 15 of the Tennessee complaint.

¶ 29: "Accordingly, since Mr. Eisen was unaware of any significant commercial jobs that Tennier would classify as commercial labor, he questioned Ms. Duncan concerning what those commercial labor charges represented."

Substantially identical to paragraph 16 of the Tennessee complaint.

¶¶ 30 & 31: "Ms. Duncan advised Mr. Eisen that the commercial labor was for Wooly Lamb. In response, Mr. Eisen advised Ms. Duncan that Defendant did not have permission to

use Tennier's machinery, equipment, employees and resources to manufacture Wooly Lamb products at Tennier."

Substantially identical to paragraph 17 of the Tennessee complaint.

¶ 32:  "On March 11, 2006, Mr. Thier and Mr. Eisen confronted Defendant about his manufacturing of Wooly Lamb products using Tennier's machinery, equipment, employees and resources to manufacture Wooly Lamb products at Tennier in both Tennier's Huntsville and Oneida location."

Substantially identical to paragraph 18 of the Tennessee complaint.

¶ 33:  "Defendant admitted that he did not seek permission to manufacture Woolly Lamb products at Tennier and agreed to pay Tennier $168,230.20 for the labor and overhead allocations directly attributable to the manufacturing of Wooly Lamb products, exclusive of labor and overhead charges for cutting costs that were subsequently discovered by Tennier."

Substantially identical to paragraph 19 of the Tennessee complaint.

¶ 33
n.4:  "To date, Defendant has only paid Tennier $55,730.20, leaving a balance due and owing to Tennier of $112,500.00."

Identical to the first sentence of paragraph 20 of the Tennessee complaint.

¶¶ 34
& 35:  "Mr. Thier and Mr. Eisen advised defendant that all Wooly Lamb production at Tennier was to cease immediately and that Defendant must remove all Wooly Lamb products using his own resources from Tennier's facilities no later than April 30, 2006.  Mr. Thier and Mr. Eisen further advised Defendant that if Tennier determined that Defendant had engaged in any other inappropriate conduct, Defendant would be terminated."

Substantially identical to second sentence of paragraph 20 of the Tennessee complaint.

¶¶ 36
& 37:  "Upon discovering Defendant's manufacturing of Wooly Lamb products at Tennier, Mr. Thier and Mr. Eisen began to monitor Defendant's actions. Tennier subsequently determined that Defendant was using Tennier employees to remove Wooly Lamb

products from Tennier's facilities while those employees were on the clock working for Tennier."

Substantially identical to paragraph 21 of the Tennessee complaint.

¶ 38: "Defendant took those actions even though Mr. Eisen and Mr. Thier had specifically instructed Defendant to remove the products using Defendant's own resources."

Substantially identical to the first sentence of paragraph 22 of the Tennessee complaint.

¶ 39: "Upon learning of Defendant's actions, Mr. Eisen and Mr. Thier traveled to Tennessee to determine the extent of Defendant's operations."

Substantially identical to the second sentence of paragraph 22 of the Tennessee complaint.

¶¶ 40 & 41: "Mr. Eisen and Mr. Thier visited the Wooly Lamb facility and, although they discovered that there were Tennier employees working for Wooly Lamb outside their normal Tennier schedule and not being paid by Tennier, Mr. Eisen and Mr. Thier determined that Defendant had removed Tennier machinery and equipment from Tennier's manufacturing facilities and moved such machinery and equipment to the Wooly Lamb facility without permission. Upon information and belief, Defendant had directed Tennier employees to move the machinery and equipment to the Wooly Lamb facility."

Substantially identical to paragraphs 23 and 24 of the Tennessee complaint.

¶ 42: "Upon learning of Defendant's conduct, Tennier terminated Defendant, and commenced an investigation to determine the scope and nature of Defendant's operations, including, but not limited to, those related to Wooly Lamb."

Substantially identical to paragraph 25 of the Tennessee complaint.

¶ 43: "During the course of its investigation, Tennier determined that Defendant removed equipment worth $7,081.62 from Tennier's manufacturing facilities."

Substantially identical to paragraph 26 of the Tennessee complaint.

¶ 47: "Tennier further learned that, beginning in 2001 and continuing through 2006, Defendant was using Tennier personnel to remodel or work on his personal

residence(s), rental property and/or properties, automobile(s), boat(s), and motorcycle(s) while those employees were working on the clock for Tennier."

Substantially identical to paragraph 27 of the Tennessee complaint.

¶ 48:    "Tennier discovered that Defendant owned and/or was affiliated with three separate companies, MBI, Inc., New Tech Electronics, and Eagle Machine & Tool Company, each of which built parts and machines for Tennier."

Substantially identical to the first sentence of paragraph 28 of the Tennessee complaint.

¶ 48,
n. 5:    "MBI, LLC ("MBI") is a Tennessee Limited Liability Company whose principal place of business is located at 1225 Eagle Bend Road, Clinton, Tennessee 37716. MBI does business as New Tech Electronics ("New Tech") and Eagle Machine & Tool Company ("Eagle Machine")."

Identical to paragraph 4 of the Tennessee complaint.

¶ 49:    "Following Defendant's termination, Tennier's audit uncovered that, on multiple occasions, machines that Tennier purchased from MBI, Inc., New Tech Electronics and Eagle Machine & Tool Company, were assembled by Tennier employees while those employees were working on the clock for Tennier."

Substantially identical to paragraph 29 of the Tennessee complaint.

¶ 50:    "In addition, Tennier learned that Defendant increased the costs and overcharged Tennier for certain machine parts that Tennier purchased from MBI, etc."

Substantially identical to paragraph 30 of the Tennessee complaint.

¶ 51:    "Upon review of Tennier's books and records, Tennier determined that Defendant personally benefitted from the labor of Tennier employees both personally as well as an owner of MBI, New Tech Electronics, and Eagle Machine & Tool Company, in the amount of $800,063.80."

Substantially identical to paragraph 31 of the Tennessee complaint.

¶ 51,
n.6:    "This amount includes Defendant's salary for the last nine months while he was employed by Tennier because Tennier determined that Defendant spent 90% of his time working on the Wooly Lamb business rather than for Tennier. Tennier also determined that since 2001, Defendant spent 40% of his of his time working on

9

business other than Tennier. Based on a review of the accounting records, Tennier believes that Defendant, through two companies, New Tech and Eagle Machine, overcharged Tennier for machine parts in the amount of $425,936.42."

Substantially identical to paragraphs 32 and 33 of the Tennessee complaint.

¶ 54:  "Defendant's actions in connection with his operation of MBI, New Tech, and Eagle Machine, constitute a breach of Defendant's fiduciary duty to Tennier as Plant Manager and Director of Manufacturing."

Breach of fiduciary duty is also alleged in paragraphs 60 and 61 of the Tennessee complaint.

¶ 57:  "From time to time, Tennier used, and continues to use subcontractors to assemble products and is charged a per-piece rate for subcontracted work."

Substantially identical to the first sentence of paragraph 34 of the Tennessee complaint.

¶ 58:  "As Director of Manufacturing, Defendant negotiated the per piece rate for the subcontracted work."

Substantially identical to the first sentence of paragraph 35 of the Tennessee complaint.

¶ 59:  "While defendant was employed at Tennier, an employee requested that Tennier subcontract some of its work to one of her children's business, J&A Corporation ("J&A").

Substantially identical to the second sentence of paragraph 34 of the Tennessee complaint.

¶ 60:  "Tennier subcontracted to J&A three separate pieces of work."

Identical to the third sentence of paragraph 34 of the Tennessee complaint.

¶ 61:  "Unknown to Tennier, J&A subcontracted one piece of the work to another entity that Defendant controlled, and paid the entire contract rate to Defendant through that entity except four (4) cents."

Substantially identical to the second sentence of paragraph 35 of the Tennessee complaint.

¶ 62:  "After Defendant's termination, Tennier reviewed the per piece rates for all J&A work and determined that Tennier was paying at least double the amount it should have been paying based on time studies for the labor involved.  Accordingly, Tennier

reduced the rates paid to J&A, and Tennier determined that the over-charges by J&A from November 7, 2005, until May 15, 2006, totaled $86,300.00."

Substantially identical to paragraph 36 of the Tennessee complaint.

¶ 63:   "Upon information and belief, J&A paid the over-charges to MBI in violation of the Anti-Kick Back provisions contained in the United States Government contracts."

Identical to paragraph 37 of the Tennessee complaint.

¶¶ 65 to 67:   "In Defendant's capacity as Tennier's Plant Manager and Director of Manufacturing, Defendant learned confidential and proprietary information relative to its products and specifically, the Tennier Modular Sleep System ('MSS')."  The MSS is unique to Tennier because, among other things, it was developed and perfected over many years through considerable investment in: (i) research and development; (ii) development of specialized equipment to manufacture certain components of the MSS; and (iii) the development and perfection of a unique closing system for the MSS, which has been patented by Tennier. The specialized process pertaining to Tennier's manufacturing of the MSS are not known generally in the industry or public."

Substantially identical to paragraph 13 of the Tennessee amended complaint.

¶¶ 68 & 69:   "The United States Government has purchased the MSS from Tennier for many years.  Over the years, Tennier on its own initiative and through the expenditure of its own resources has made several improvements to the MSS which have been accepted by the United States Government."

Identical to paragraph 14 of the Tennessee amended complaint.

¶¶ 70 & 71:   "The most recent mass production contract with the United States Government for sleep systems was purchased on a performance basis. Through this method of purchasing, the United States Government indicated in its bid solicitation the performance criteria for the finished product, including, thermal protection capabilities to certain temperatures, tear strength criteria for fabrics, and moisture vapor transmission standards; however, the United States Government does not provide detailed construction specifications, specific component requirements,

11

patterns or drawings for the sleep systems, which are left to the bidders to design and submit proposals of their individual designs for the sleep systems being solicited."

Substantially identical to paragraph 15 of the Tennessee amended complaint.

¶¶ 72
to 75: "In advance of submitting a proposal for the last United States Government mass sleep system production contract, Tennier significantly redesigned the MSS. Tennier was the successful offeror under that procurement and, as a result, contract W9124Q-05-D0826 was awarded to Tennier, which contract is ongoing and permits the United States Government to purchase up to one million sleep systems from Tennier. At the time, Tennier redesigned the MSS in anticipation of its offer for the current contract and, at the time Tennier prepared and presented its proposal thereunder, Defendant was employed by Tennier as Plant Manager and Director of Manufacturing. Defendant participated in the preparation of Tennier's proposal for the procurement of the United States Government contract and was fully familiar with all of the revisions and innovations to the MSS developed by Tennier at that time."

Substantially identical to paragraph 16 of the Tennessee amended complaint.

¶ 73,
n.7: "In addition, Tennier produces components of the MSS for the United States Government under contract SPO100-03-D-4047, and Tennier manufactures other sleeping bags for the United States Government that are used by, among others, fire fighters."

Substantially identical to paragraph 21 of the Tennessee amended complaint.

¶¶ 76
& 77: "For a consistent method of manufacture for the sleep systems and the components thereof, and to assure that all factory lines, including any production of subcontractors, are operating consistently and to the same manufacturing and quality standards, Tennier had to develop its own patterns and a detailed specification book or production manual for the production of the sleep system that was offered to the United States Government and that resulted in the award of contract W9124Q-05-D-0826 to Tennier. The proprietary information and specification book or production manual documents are generated and owned by Tennier."

Substantially identical to paragraph 17 of the Tennessee amended complaint.

¶ 78: "Upon information and belief, Proper International Sales was competing with Tennier for the Unites States Government contract 0826."

Substantially identical to paragraph 18 of the Tennessee amended complaint.

¶ 79: "The MSS and sleeping bag business represents a large portion of Tennier's business and Tennier anticipates that there will likely be a further procurement of sleep systems by the United States Government in the near future."

Substantially identical to the third sentence of paragraph 21 and paragraph 20 of the Tennessee amended complaint.

¶¶ 80 & 81: "On June 13, 2007, Tennier learned that one of its most significant competitors, Proper International Sales ("Proper"), hired Defendant. Upon information and belief, Defendant was hired by Proper as a plant manager for some or all of its manufacturing facilities in Puerto Rico."

Substantially identical to paragraph 12 of the Tennessee amended complaint.

¶¶ 82 & 83: "It is Tennier's belief that Defendant may have or may divulge to Proper, Tennier's confidential and proprietary information, specifically information concerning the MSS and in particular, Tennier's latest revisions and innovations to the MSS. Tennier will suffer irreparable harm as a result of Defendant's employment with Proper, if Proper accepts any and confidential and proprietary information from Defendant."

Substantially identical to paragraph 22 of the Tennessee amended complaint.

¶ 85: "Tennier's customer lists, pricing information, cost information, business plans and other confidential and proprietary information and trade secrets under TUTSA because: (i) Tennier uses such confidential and proprietary information to conduct business; (ii) Tennier's confidential and proprietary information derives significant independent economic value from not being publicly known and from not being generally known in Tennier's trade or business; (iii) Tennier's confidential and proprietary and/or trade secrets cannot be readily ascertained or derived from publicly available information; and (iv) Tennier takes reasonable measures to maintain the confidentiality and secrecy of its confidential and proprietary information, including, but not limited to, limiting access to such information to senior management serving in a fiduciary capacity and key employees that require such information to conduct business on behalf of Tennier. (v) Tennier uses such confidential and proprietary information to conduct business; (vi) Tennier's confidential and proprietary

13

information derives significant independent economic value from not being publicly known and from not being generally known in Tennier's trade or business; (vii) Tennier's confidential and proprietary and/or trade secrets cannot be readily ascertained or derived from publicly available information; and (viii) Tennier takes reasonable measures to maintain the confidentiality and secrecy of its confidential and proprietary information, including, but not limited to, entering into confidentiality agreements with its employees and limiting access to such information to senior management serving in a fiduciary capacity and key employees that require such information to conduct business on behalf of Tennier."

Substantially identical to paragraph 78 of the Tennessee complaint.

¶ 86:  "At all times relevant, Defendant's use and disclosure of Tennier's confidential and proprietary information was a breach of his fiduciary duty to Tennier."

Substantially identical to paragraph 79 of the Tennessee complaint.

¶ 87:  "Tennier has not provided Defendant with its express or implied consent to utilize Tennier's confidential and proprietary information for his own benefit or personal gain."

Substantially identical to paragraph 80 of the Tennessee complaint.

¶ 88:  "Tennier has suffered damages as a result of Defendant's misappropriation of Tennier's confidential and proprietary information and trade secrets."

Substantially identical to paragraph 81 of the Tennessee complaint.

¶ 89:  "Defendant's misappropriation of Tennier's confidential and proprietary information and trade secrets was willful and malicious."

Substantially identical to paragraph 82 of the Tennessee complaint.

Again, the factual allegations underlying the adversary complaint in this proceeding are identical or substantially identical to the factual allegations raised by Tennier against Van Bible in the pending Tennessee litigation.

14

## III. APPLICABLE LAW AND DISCUSSION

Tennier's own words provide much of the foundation for this opinion and order. In the memorandum in support of the motion to lift stay, Tennier argued that the automatic stay should be lifted so that the state court in Tennessee "can continue the pending litigation between former business partners in claims of fraud, willful and malicious injury under the Tennessee Uniform Trade Secrets Act and state's law." (Bankr. Dkt. No. 60 at ¶ 9; emphasis in original removed; Tennier's memorandum of law will be cited to, hereinafter, as "T.M.") Tennier further argued that the bankruptcy court had to abstain, under 28 U.S.C. § 1334(c)(2), "from hearing [an] action between debtor and his business partner involving fraud and mismanagement of partnership . . . because this is [a] noncore proceeding based on state law and because action was commenced and can be timely adjudicated in [the] state forum of appropriate jurisdiction." (T.M. at ¶ 10.) Tennier then represented to the court that continued litigation in the bankruptcy court in Puerto Rico "would create an enormous burden to the costs of the proceedings . . ." and went on to list several reasons for this. (T.M. at ¶ 13.) Among those reasons, were the following:

(a) "all 14 witnesses for Tennier live in the state of Tennessee;" (T.M. at ¶ 13(1).)

(b) "there has been extensive discovery proceedings for the last 4 years of litigation for Tennier's claim and Debtor's counter claim at the Tennessee State Court;" (T.M. at ¶ 13(2).)

(c) "this is a noncore proceeding based on state law and can be timely adjudicated in [the] state forum of appropriate jurisdiction;" and (T.M. at ¶ 13(4).)

(d) the "expertise of this Honorable Bankruptcy Court is unnecessary in this state court action since claims are essentially for fraud between business partners based on state law interpretation." (T.M. at ¶ 13(5).)

15

The alleged facts underlying this adversary proceeding are substantially identical to the facts alleged in the Tennessee litigation. Thus, the reasons given by Tennier to have those facts adjudicated by the Tennessee court support the court's decision to hold in abeyance the adversary proceeding pending the final adjudication of Tennier's claims against Van Bible in the Tennessee court. The court rejects Tennier's attempt to assume inconsistent and contradictory positions in this controversy. Tennier, previously with respect to the lift of stay motion, argued that the bankruptcy court had to abstain from hearing an action between Tennier and Van Bible involving fraud and mismanagement. Tennier, now with respect to the adversary complaint, argues that not only should this court adjudicate the fraud and mismanagement allegations before the Tennessee court, but it should go on to enter a money judgement against Van Bible based on those allegations and render the Tennessee litigation moot. (Bankr. Dkt. No. 48 at p. 7.) The "general rule [is] that a party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits." FDIC v. Panelfab Puerto Rico, Inc., 739 F.2d 26, 30 (1st Cir. 1984) (quoting Gleason v. United States, 458 F.2d 171, 175 (3rd Cir. 1972)).

Easily dispatched is Tennier's request that the bankruptcy court determine the amount of its claim against Van Bible in the claim-objection process. That was addressed and rejected in the court's opinion and order dated June 5, 2012. (Bankr. Dkt. No. 130.)

Next, is the matter of issue preclusion. Tennier admits that a determination in the Tennessee court "may or may not be entitled to preclusive effect . . ." in the bankruptcy court. (Adv. Dkt. No. 48 at p. 8.) Thus, Tennier argues, "if the state litigation is concluded first, a second trial could be necessitated here." (Adv. Dkt. No. 48 at p. 8.) Tennier also points out that if it "is unsuccessful

16

in its prosecution of this adversary complaint, the state litigation will become moot, as Tennier's prepetition claim will be discharged." (Adv. Dkt. No. 48 at pp. 7-8.)

But, each point argued by Tennier can be turned on its head. If Tennier is unsuccessful in the Tennessee litigation, the adversary complaint will become moot. Plainly there can be no exception to discharge of a nonexistent claim. And, if Tennier is successful in the Tennessee litigation, a second trial may be unnecessary here. Under the full faith and credit statute, a state-court judgment has the same preclusive effect in bankruptcy court as in that state's court. 28 U.S.C.A. § 1738; see also 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4470.3 (2nd ed. 2002). In Tennessee courts, issue preclusion or "[c]ollateral estoppel prevents identical parties from relitigating in a different action issues determined in a previous suit." Richardson v. Tennessee Bd. of Dentistry, 913 S.W.2d 446, 459 n.11 (Tenn. 1995) (citing Massengill v. Scott, 738 S.W.2d 629, 631 (Tenn. 1987); see also Mullins v. State, 294 S.W.3d 534 (Tenn. 2009). Thus, a Tennessee-state-court judgment favorable to Tennier could prevent relitigation in Puerto Rico in this adversary proceeding of issues determined in Tennessee.

In Piccicuto v. Dwyer, 39 F.3d 37, 39 (1st Cir. 1994), a creditor filed an adversary complaint to except from discharge under section 523(a)(6) a claim based on a Massachusetts-court, money judgement against a debtor "for, *inter alia*, intentional interference with an advantageous business relationship and unfair trade practices in a commercial context." Section 523(a)(6) excepts from discharge debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" and is the basis for the relief requested by Tennier in the third claim for relief of its adversary complaint. (Adv. Dkt. # 1 at p. 16.) 11 U.S.C. § 523(a)(6). The bankruptcy court in Piccicuto denied the creditor's motion for summary judgment based on claim preclusion and entered

17

instead summary judgement in favor of the debtor. The district court affirmed. The court of appeals reversed and entered summary judgment in favor of the creditor, holding that the Massachusetts "court's unambiguous and factually supported findings must be given effect in this action." Piccicuto, 39 F.3d at 42.

The case of In re Brier, 274 B.R. 37 (Bankr. D.Mass. 2002) dealt with facts similar to Tennier's adversary complaint. In Brier, the bankruptcy court gave preclusive effect to issues previously determined by a Rhode Island court against a debtor and entered summary judgment in favor of a creditor under section 523(a)(6) to except its claim from discharge. Like Tennier's Tennessee complaint, the Rhode Island complaint in Brier alleged misappropriation of trade secrets, tortious interference with contractual relations, interference with prospective business advantage, and breach of professional duty. Brier, 274 B.R. at 39. The Brier court noted that "[n]umerous courts have concluded that a determination of willful and malicious conduct for purposes of awarding exemplary damages under the Uniform Trade Secrets Act collaterally estops a debtor from relitigating the same issue under § 523(a)(6)." Brier, 274 B.R. at 45 (citing Dent Wizard Int'l Corp. v. Brown (In re Brown), 237 B.R. 740 (Bankr. C.D.Cal. 1999) and later discussing Spring Works, Inc. v. Sarff (In re Sarff), 242 B.R. 620 (6th Cir. BAP 2000)).

Holding this adversary proceeding in abeyance pending the final resolution of the Tennessee litigation would best serve the interests of all the parties. The automatic stay was lifted on December 14, 2010, in order to allow Tennier to continue with the Tennessee litigation. The Tennessee litigation commenced more than three years before the filing of this adversary proceeding. Before the stay was lifted, four years of extensive discovery had already been conducted in Tennessee on Tennier's claims and Van Bible's counterclaim. The factual allegations underlying

18

Tennier's complaints in the state court in Tennessee and the bankruptcy court in Puerto Rico are substantially identical in the two proceedings. Requiring the parties to litigate and the courts to determine the same facts in two different forums, simultaneously, would be an unnecessary waste of both the parties' and the courts' limited resources.

## IV. CONCLUSION.

For all of the above reasons, the adversary proceeding of caption is held in abeyance until a final and unappealable judgment is entered by the Tennessee court. At that time, this adversary proceeding can continue, if Tennier prevails in Tennessee, to determine whether the Tennessee judgment can be excepted from discharge pursuant to section 523 of the Bankruptcy Code.

Tennier is ordered to report to the court every ninety (90) days regarding the progress of the Tennessee litigation, and is put on notice that failure to prosecute its claims against Van Bible in Tennessee may result in the dismissal of this adversary proceeding under Rule 41(b) of the Federal Rules of Civil Procedure, which is made applicable to this proceeding by Rule 7041 of the Federal Rules of Bankruptcy Procedure.

In San Juan, Puerto Rico, this 3rd day of August, 2012.

Edward A. Godoy
U.S. Bankruptcy Judge

19